ministrators, or assigns; and provided, further, that said renewal commission, if earned, as aforesaid, shall be payable if the Company shall terminate your employment contract without assigning any cause therefor.

On June 22, 1920, the taxpayer executed and delivered a written assignment to his wife, Amy T. Browne, of all his right, title, and interest in and to any and all such renewal commissions then due him or which might accrue to him on or after such date under the terms of the aforesaid agreements with the New York Life Insurance Co. A duplicate original of such assignment was delivered to the New York Life Insurance Co., who thereafter, in 1920, paid said Amy T. Browne $5,270.69 as the amount due under such contracts. This amount was reported by Amy T. Browne as income to her. The Commissioner included such amount as income to the taxpayer and assessed the deficiency in tax here in question.

### DECISION.

The determination of the Commissioner is approved. See *Mitchell* v. *Bowers*, 9 Fed. (2d) 414; *Appeal of Yale Kneeland*, 1 B. T. A. 150.

---

## APPEAL OF TURNER TERMINAL CO.

Docket No. 3934. Submitted September 24, 1925. Decided February 17, 1926.

*George H. Goodner*, *C. P. A.*, and *Walter K. Smith*, *C. P. A.*, for the taxpayer.
*Briggs G. Simpich*, *Esq.*, for the Commissioner.

### Before GREEN and PHILLIPS.

The Commissioner determined a deficiency in income and profits taxes for the year 1920 in the sum of $2,792.80. The petitioner concedes the correctness of a part of the deficiency, and there is involved in this appeal only the sum of $702.51. The petitioner contends, and the Commissioner denies, that it is entitled to a paid-in surplus of $400,000, upon the ground that it acquired, in exchange for stock of the par value of $200,000, assets of the value of $600,000.

### FINDINGS OF FACT.

The petitioner, the Turner Terminal Co., an Alabama corporation, with its principal place of business at Mobile, was organized in 1909 under the name of the Turner Hartwell Docks Co., with an authorized capital stock of $200,000.

For a period of approximately 15 years prior to the organization of the company its three stockholders had been gradually

accumulating water-front property near the mouth of the Mobile River. Their holdings by 1909 totaled 28 acres. For some five or six years the title to all of the water-front property in Mobile was involved in litigation, which was finally terminated in 1906 by the decision of the Supreme Court of the State of Alabama in the case of *Mobile Docks Co.* v. *City of Mobile*, 146 Ala. 198.

The water-front property was acquired and the corporation was organized for the purpose of constructing a very large shipping terminal, consisting of slips and docks for ocean-going vessels, warehouses, and railroad tracks connecting with those of the Louisville & Nashville Railroad and the Gulf, Mobile & Northern Railroad. The tract acquired by the taxpayer, by reason of its location on the river, its frontage thereon, and proximity to the railroads, was especially well adapted to the use for which it was acquired.

The entire authorized capital stock was exchanged in 1909 for the 28 acres of land, and shortly thereafter the corporation perfected its plans for its slips, docks, etc., and negotiated a bond issue of $250,000. The actual construction work was started immediately thereafter.

The stockholders at the time of the exchange of the property for stock placed on the property a value of $600,000. This valuation was approximately 50 cents per square foot. There were no sales of similar property within two years before or after the exchange. In 1906 three similar pieces were sold, one at 68, one at 94, and one at 49 cents per square foot. The next sale was in 1915, at the rate of 68 cents per square foot. The next was in 1916, at the rate of 94 cents per square foot. In 1909 a small tract adjoining the railroad tracks, but having no water frontage, sold for 38 cents per square foot. In 1910, at which time the company had expended approximately $200,000 in construction work, it rejected an offer of $850,000 and refused to give an option to purchase at $1,000,000.

The assets which the petitioner acquired in exchange for its stock of the par value of $200,000 had an actual cash value of $600,000 at the time of the exchange.

### DECISION.

The deficiency should be computed in accordance with the foregoing findings of fact. Final determination will be settled on 10 days' notice, under Rule 50.

### APPEAL OF THOMAS CUSACK CO.

Docket No. 1987. Submitted July 9, 1925. Decided February 17, 1926.

*Camden R. McAtee, Esq.*, for the taxpayer.
*A. R. Marrs, Esq.*, for the Commissioner.